## J. E. Moffett v. Thomas E. Sheehey.

1. EXEMPTIONS—*Requisites of a Schedule.*—The schedule under Ch. 52, R. S., entitled "Exemptions," should list separately each article of a distinct kind, or of a distinct quality, grade, or description of the same kind, in order to enable appraisers the more readily to fix the value of each article contained in it.

2. APPRAISEMENT—*Insufficiency of Waiver.*—When appraisers have been appointed to make an appraisement under Ch. 52, R. S., entitled

"Exemptions," and the same is made by them and accepted by the debtor, he waives all imperfections in it and can not be heard to object to it afterward.

3. EXEMPTIONS—*Schedule—Appraisement and Selection.*—The officer having the execution can not make a selection for the debtor, nor can he change one made by the debtor.

4. EXEMPTIONS—*Imperfect Appraisement—Debtor Selection.*—If a schedule and appraisement, as made by the appraisers, does not enable the debtor to select specific articles at appraised values, he should seek to have them corrected.

5. EXEMPTIONS—*Mortgaged Property.*—A defendant is the absolute owner of property as against the execution creditor and the officer having the execution, and as against mortgagees also, subject only to the lien of their mortgages, which they were not bound and might never be disposed to enforce. The debtor's interest, notwithstanding the mortgage, is subject to execution.

6. EXEMPTIONS—*Construction of the Statute.*—All the proceedings under the statute of exemptions show that it contemplates only specific, tangible articles of property, which can be taken, delivered, returned, replevied, etc. An equity of redemption, a mere lien or equitable claim, without possession, is susceptible of neither.

7. EXEMPTIONS—*Duty of Appraisers.*—Appraisers are authorized and required only to fix the fair value of what they can see and at what they can ascertain by inspection and handling. They have no authority to consider and adjust equities between an execution debtor and third persons, or to ascertain whether a mortgage was given for money borrowed, for future advances, or for indemnity to the mortgagee against a liability which might or might not arise.

8. EXEMPTIONS—*Debtor's Right to Property Defined.*—If the execution debtor takes it as exempt, he must take it at the value fixed upon it by the appraisers, unaffected by other liens upon it. If he has given a mortgage upon it, the presumption is that he has had and enjoyed so much of its value, and there is no hardship in denying to him the claim to have it again. In this proceeding he is not authorized to set up a claim for the mortgagee that is not prejudiced by the execution.

**Memorandum.**—Replevin. Error to the Circuit Court of DeWitt County; the Hon. GEORGE W. HERDMAN, Judge, presiding. Heard in this court at the May term, 1893. Reversed and remanded. Opinion filed October 28, 1893.

The opinion states the case.

MOORE & WARNER, attorneys for plaintiff in error.

R. A. LEMON and O. E. HARRIS, attorneys for defendant in error.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Replevin commenced before a justice of the peace, by an execution debtor against a constable, for goods levied on and taken, which he claims were exempt. Tried on appeal, by the court without a jury, and judgment rendered on the finding for plaintiff. Defendant appealed.

Plaintiff kept a drinking saloon, was married and residing with his family. When notified of the execution by the officer, he said he had no property except what was in the saloon, but did not offer to turn out any, nor intimate a purpose to claim his exemption. Afterward on the same day, appellant levied on the fixtures and personal property therein and locked the door, but removed nothing except two barrels of whisky, one keg of gin, one keg of port wine and one keg of brandy, which comprise all that was replevied or is in controversy, the residue having been surrendered. In the same evening or on the following morning appellee delivered to appellant, as a schedule, the following paper, which, with the appraisement and selection, are taken from the abstract and conceded to be correct:

"To E. J. Moffett, constable. In the matter of the execution in favor of Harvey & Son and against Thomas E. Sheehey. Schedule of all the personal property of the said Thomas Sheehey, a married man, and at the head of a family, made the 28th day of April, A. D. 1891.

"Chattel property, valuation fixed by appraisers:

"One saloon, bar and fixtures, known as the Oak Palace Saloon, in Clinton, Illinois, consisting of front and back mirror, bar, ice chest, cigar case, stand, and side mirror, one iron safe, one desk, all glassware and furnishing articles necessary and used in said saloon—one set of fixtures, $601.50.

"In the running and operating the same, and all stock on hand, consisting of cigars, liquors, wines and beer, and all manner of stock at said place on hand—stock, $188.70.

"And all the book accounts of said Sheehey, kept and appearing on the books against various persons, wearing apparel of debtor—book accounts, estimated, $25.

Moffett v. Sheehey.

" One shot gun, two target rifles, all the several pictures on the walls of said saloon, one stove, all empty barrels and kegs in said saloon—shooting gallery, stoves and pictures, three guns, $64. Total $879.20.

" That the foregoing articles of personal property are under mortgage as follows: $290 mortgage to Thomas Sheehey, Sr., and John Carroll, and $448 mortgage to D. W. Brenneman & Co., all of which mortgages are wholly unpaid.

" Debts due and from whom due.... Name.... Nature of debt, whether note or account...... When due...... Amount....

" As here before stated, all debts due and owing are the accounts on the books of the debtor in his said saloon, consisting of accounts against various persons, and in various amounts, too numerous to mention in detail, all of which are ready to be produced for inspection."

Affidavit of Thomas E. Sheehey, stating that the above is a full, complete and true schedule of all the personal property, of every kind and character owned by him, including money on hand and debts due and owing him.

Sworn to April 28, 1891, before A. J. Richey, J. P.

Affidavit of appraisers that they would fairly and impartially appraise the property of Thomas E. Sheehey, set forth and described in the foregoing schedule, made April 29, 1891.

Report of appraisers, stating they had carefully examined the articles mentioned in the foregoing schedule of Thomas E. Sheehey, and had fairly and impartially appraised the value thereof at the sums by them set opposite said articles in said schedule.

Notice of Thomas E. Sheehey, appellee, in the words and figures following :

" To E. J. Moffett, constable and city marshal in and for the city of Clinton, DeWitt county, Illinois."

" I hereby select the following articles of those named in the foregoing schedule, which I desire to retain, viz.: Two barrels of whisky, one keg of gin, one keg of port wine and any and all of the stock of cigars, wines, whiskies

and stock on hand, heretofore scheduled and used in running the Oak Palace saloon, in Clinton, Illinois. Also the fixtures, consisting of bar, mirror, stoves, one safe, desk, pictures there, and all of the articles of furniture, comprising the bar in said saloon, embracing all mirrors, pictures and glassware, and any and all book accounts showing, and all articles levied on by the said Moffett, and in the building known as the Oak Palace saloon, one shot gun, two target rifles, and that said property are first subject to the two mortgages heretofore mentioned in this schedule on opposite page."

"THOMAS E. SHEEHEY."

Appellant did not deliver the barrels and kegs of liquor mentioned, and the question is whether appellee, by the proceedings shown, was entitled to them as exempt from the execution, or more specifically, did he make, substantially, such a schedule and selection as the statute required, to entitle him to hold them.

That requirement is that the debtor shall "make a schedule of all of his personal property of every kind and character, including money on hand and debts due and owing to the debtor, and deliver the same to the officer having the execution," and after the appraiser shall have fixed a "fair valuation upon each article contained in said schedule," he shall "then select from such schedule the articles he may desire to retain, the aggregate value of which shall not exceed the amount exempted, to which he may be entitled" (which in this case was $400 worth), "and deliver the. remainder to the officer having the writ." R. S., Ch. 52, Sec. 14.

The schedule should list separately each article of a distinct kind, or of a distinct quality, grade or description of the same kind, to enable appraisers the more readily to fix the value of each article contained in it. How else would they certainly know when or whether they had examined "all glassware and furnishing articles," "all stock in hand, consisting of cigars, liquors, wine and beer, and all manner of stock" or "all empty barrels and kegs" in a saloon indicated?

And why should they be subjected to the labor of examining each of an unstated number of articles of the same kind, grade, quality and description? Such articles should be listed by the number of pieces, yards, gallons, bushels, or the like, so that they would need only to ascertain the number, examine a sample, appraise the lot accordingly, and leave the claimant debtor to the risk of selecting them as of such number and value. Appellee, then, did not make such a schedule as the statute contemplated.

Nor was the appraisement such. The schedule appears in the record as in the abstract, in four separate and distinct groups, each of which mentioned miscellaneous articles in a lump, and the property was appraised in the same way. There was no fixing of a "fair value upon each article." The officer and the appraisers, or either, might well have objected to the schedule, and the debtor to the appraisement, but neither made an objection. The debtor accepted the appraisement as made, and so waived its imperfection. His schedule suggested, occasioned and excused it. The first fault was his own. He made his selection, if it may be so called, upon the appraisement made. But he did not limit it to articles not exceeding in aggregate value the amount exempted. He was bound to select them at their appraised value. Finlen v. Howard, 126 Ill. 262. What he selected embraced all that was scheduled. It was appraised at $879.20, and he was entitled to only four hundred dollars' worth, showing an excess of $479.20. The officer could not select for him nor change the selection he made. If the schedule and appraisement as made did not enable him to select specific articles at any appraised value, he should have sought to have them corrected. But it is evident that if each article had been appraised and the aggregate had amounted to what it did, he would have demanded them all, just as he did, because he supposed the amount of the mortgages upon them should be deducted in their appraisement. Otherwise he could have had no reason for stating the fact and amount of those mortgages in his schedule.

And the court below seems to have taken that view of

the law. We do not concur in it. Appellee's interest in the property was not an undivided part, a lien, or an equitable claim. As stated in his affidavit for the writ of replevin he was the owner and entitled to the possession of the specific articles in controversy. He was the absolute owner as against the execution creditor and the officer. And as against the mortgagees also, subject only to the lien of their mortgages, respectively, which they were not bound and might never be disposed to enforce. His interest, notwithstanding the mortgages, was subject to the execution, which could be levied upon the property. All the proceedings under this statute show that it contemplated only specific tangible articles of property, which could be taken, delivered, returned and replevied. An equity of redemption, a mere lien or equitable claim, without possession, are susceptible of neither. Appraisers are authorized and required only to fix the fair value of what they can see and at what they can ascertain by inspection and handling. They have no power or authority to consider and adjust equities in it between the execution debtor and third parties, to ascertain whether his mortgage was given for money borrowed, for future advances, or for indemnity to the mortgagee against a liability which might or might not arise (as was shown and admitted to be the case with one of the mortgages here), whether there was usury in it and how much had been paid, or any like questions. These are beyond their fitness as well as their authority to determine. They do not affect the fair value of the property. If the execution debtor takes it as exempt, he must take it at that value, unaffected by other liens upon it. If he has given a mortgage upon it the presumption would be that he has had and enjoyed so much of its value, and there is no hardship in denying to him the claim to have it again. In this proceeding he is not authorized to set up a claim for the mortgagee that is not prejudiced by the execution.

For the reasons thus stated the judgment will be reversed and the cause remanded.